## JONES vs. RELFE.

A distress warrant having issued and been levied by Relfe, the U. S. Marshal, on the lands of Jones, certain notes were placed by J. in the hands of R., in 1837, to be collected and applied to the payment of the distress warrant—the transfer being made to procure a release of the lands of J. from the lien of the warrant—*and subject to the approval or modification of the solicitor of the treasury.* Held,

1. That to entitle J. to maintain an action of trover against R. for the notes, it is not sufficient merely to shew, that there was no power in any officer to release the lien of the warrant. It must also be shewn, that the modification made by the solicitor was such as to defeat the purpose of J., and that notice thereof had been given to R. and a demand made for the notes.

2. The plaintiff having closed his case upon such evidence, it was no error in the Circuit Court to refuse permission to introduce evidence shewing that plaintiff had acceded to the modification of the solicitor.

## APPEAL from St. Francois Circuit Court.

FRISSELL, *for Appellant, insists:*

1. That the court erred in instructing the jury, that the contract between the parties, created a power in Relfe by which he as Marshal and in behalf of the United States, had a beneficial interest, and that Jones had no right to revoke such power, and demand a redelivery of the notes, except as stipulated in such arrangement.

2. That the court erred in instructing the jury, that to entitle the plaintiff to revoke said power and to demand a re-delivery of the notes, it is requisite that he should prove, that the Solicitor of the treasury had acted upon the arrangement, and had rejected or modified the same, in such a manner as to entitle the plaintiff to a return of the notes.

First, Because the contract between Relfe and Jones was conditional in its terms, depending upon the contingency of his receiving land, released from the levy under the distress warrant. 5 Mass. R., 385, 541; Story on Contracts, sec. 231, 232, 237, 252, 258, 259; Chitty on Contracts, 73, 74; 2 Gill & Johns., 382.

Second, That the release of his lands from the levy, being contrary to law, and it being therefore impossible for the Solicitor of the treasury or any other person to release the lands from the levy, no interest in the notes vested in the Marshal, or in the the United States by virtue of the transfer mentioned in the receipt. Acts of Congress of May 15, 1820; Story's Laws, 1791; 9 Peters Rep., 8; 5 Mass. Rep., 385, Denny vs. Lincoln; Churchill vs. Perkins, 5 Mass. Rep., 541; 1 Bacon's Abr., 645, 650.

Third, That Relfe then was liable at any time to an action, if he neglected or refused to deliver the notes to Jones, or his order upon demand.

Fourth, That the matters which the plaintiff was required to prove, under the instruction of the court, throws upon him the proof of a negative proposition, and a matter which is peculiarly within the knowledge of the defendant. 1 Phillips on Evidence, 198, 199, 194, 200.

3. If the foregoing points should be overruled, it is insisted that the court in the exercise of a sound discretion and the furtherance of justice, should have allowed the plaintiff to offer evidence to show, that the Solicitor of the treasury, had acted upon the purposed arrangement and rejected it, after the plaintiff had announced that he had concluded his testimony.

LEONARD & BAY, *for Appellee, insist:*

1. The instruction of the court was properly given. The delivery of the notes to Relfe, for the purposes set forth in his receipt, vested in him, as the agent of the United States, an authority which the plaintiff Jones, could not defeat at his pleasure. Canfield vs. Monger, 12 J. R., 346.

2. To maintain trover, the plaintiff must prove that he had a right to the possession of the

property, at the time of the alleged conversion. Fairbanks vs. Phelps,.22 Pick., 535. In this case, Jones did not show any right to the possession of the notes. His only evidence, was the receipt of Relfe and his refusal to deliver them to the·agent of Jones. 1 Chitty on Pleadings, 170.

3. The court properly refused to permit Jones to introduce additional testimony, after he had closed his case, and after the court had instructed the jury. It was a matter wholly within the discretion of the court, and there is no evidence that the court improperly exercised this discretionary power. Rucker vs. Edding, 7 Mo. R., 115; Brown vs. Burrus, 8 Mo. R., 30.

4. Even had the evidence been admitted, it would not have shown a right to recover, for the arrangement was approved of by the Solicitor of the treasury, and carried out according to the intention of the parties.

5. No exceptions were taken at the proper time to the instruction given, or to the refusal of the court to permit the plaintiff to introduce additional testimony. No exceptions were taken until after the refusal of the court to set aside the non-suit, and then the plaintiff, for the first time, made his exceptions. Davis vs. Burns, *et al.*, 1 Mo. R., 189; Waldo vs. Russell, 5 Mo. R., 387; 7 Mo. R., 251.

NAPTON, J., *delivered the opinion of the Court.*

This was an action of trover, brought by Jones against Relfe, in the Circuit Court of Washington county, but transferred, upon the application of Relfe, to St. Francois. A trial was had in the latter county, which resulted in a verdict against Relfe for $9558. This verdict was set aside by the court and a second trial tood place.

The plaintiff Jones gave in evidence the following receipt: "Received of General Augustus Jones, the notes named in the above list, amounting with interest, (calculated to the 1st November inst.,) to the sum of thirteen thousand six hundred and thirty-two dollars, transferred to me for the use of the United States, to collect and therewith satisfy a distress warrant issued from the office of the Solicitor of the treasury, on the 25th day of May last, and the surplus, after paying all fees for collection, to be returned to said Jones. It is understood, that this arrangement is made to endeavor to procure the release of the real estate of said Jones, now bound by the levy made under the authority of said warrant, and to be subject to the approval or modification of the Solicitor of the treasury, and if not authorized, the notes to be returned to said Augustus Jones, or order. Nov. 22, 1837. James H. Relfe, Marshal Missouri District." This receipt was preceded by a list of notes, amounting to the sum specified in the receipt.

The plaintiff then gave in evidence, the following order from Jones to Relfe: "Mr. James H. Relfe: You will deliver to Phillip T. McCabe, the notes and bonds specified in the foregoing list. May 31, 1841. A. Jones." It was proved by McCabe, that he, with the above order,

called on Relfe on the 15th June, 1841, and demanded the notes, to which Relfe replied, that he had not the said notes, that he had placed them in the hands of Arther L. Magenis, United States District Attorney, for collection, and that the whole of them had been collected, except the notes of J. L. Van Doren and Robert C. Bruffey, and that one of the notes of Van Doren had been collected, and about five hundred dollars on the notes of Bruffey. Witness was not certain whether any thing was said about the application of the proceeds of these notes to the payment of the distress warrant.

The plaintiff then read a letter from Relfe to him, dated 15th Nov., 1837, as follows: "Wednesday morning, 15th Nov., 1837. Sir: The mail brought out last night, contained a letter from Mr. Gilpin to me.— I wish you to bring your notes to Ste. Genevieve. Such discretion is left to me that I presume we can close the business. I will be at Dr. Linn's on Monday morning. Respectfully, James H. Relfe."

The plaintiff here closed his case, and upon application of the defendant, the court declared the law to be, as follows:

"The contract between the parties as evidenced by the receipt of 22d Nov., 1837, created a power in James H. Relfe, in which, as Marshal of the United States, and in behalf of the United States, he had a beneficial interest, and the plaintiff Jones had no right to revoke such power, and demand a redelivery of the notes, except as stipulated in the said arrangement; that to entitle the plaintiff to revoke said power and to demand a redelivery of said notes, it is requisite that he should prove, that the Solicitor of the Treasury had acted upon the arragement and had rejected or modified the same in such a manner as to entitle the plaintiff to a return of the notes."

Thereupon the plaintiff asked leave of the court, to supply the supposed defect in the testimony, as indicated by the above instruction; but the court refused to let in the evidence. The plaintiff took a non-suit and afterwards moved the court to set it aside, which motion was overruled. The plaintiff appealed.

The rejected evidence exhibited the following documents:

A statement of the Treasurer of the U. S., showing that Relfe had deposited on account of Jones, at different times, from 1838 to 1841, the amount of $8612 29. A letter from the Sol. Trea., (Gilpin,) to Relfe, dated Oct. 3, 1837, authorizing Relfe to postpone the sale of Jones' land for six months. A second letter dated Dec. 12, 1837, from Gilpin to Relfe, urging him to transmit a copy of the levies, &c. A third from the same, dated Jan. 26, 1838, as follows: "Sir: The Hon. Lewis F. Linn,

*Jones* vs. *Relfe.*

Senator in Congress from Missouri, has handed me your letter of the 22nd Nov., relative to the debt of Gen. Augustus Jones. Of course there is every disposition to extend to him any indulgence consistent with the security of the United States and the rules governing this office. In regard to his proposal to transfer to the U. S. certain notes therein stated, I have to say, that you are authorized to receive the same and apply the proceeds, when paid to his debt, but not to accept them in lieu of any existing lien, nor for the purpose of affecting or discharging the same. There is no authority in this office to accede to the request of Gen. Jones for the release of his real estate, now bound by the levy, nor can the notes be received on that condition, and so it is proper you should inform him." A fourth letter from the Solicitor, dated March 5, 1838, to the same purpose. A fifth letter was dated Feb. 19, 1839. It stated, that the securities of Augustus Jones, had assented to a postponement of the sale of his real estate and negroes, for 3 months, and proceeds: "If in your opinion, no injury will accrue to the U. S. by granting this indulgence to Mr. Jones, you are hereby authorized to suspend proceedings accordingly, upon his paying any costs that may now be due. This, however is not to interfere in any manner with your proceeding to *collect the notes given to you by Gen. Jones as collateral security.* On the contrary, I have to request you to proceed with these collections, and to deposite the amounts you may receive as promptly as possible to the credit of the Treasurer, &c. *Gen. Jones expresses his confident expectation of being able to discharge the whole balance before the present postponement expires, &c.*" The distress warrant, issued 25th May, 1837, was also included in this rejected evidence, and the levy and return of the Marshal.

The principal, if not the only question, in this case, arises out of the instruction given by the Circuit Court. The plaintiff in error contends, that, inasmuch as by the laws of the United States, the Solicitor of the Treasury had no power to suspend or remove the lien of the distress warrant upon Jones' real estate, the contract was therefore immediately at an end, and Relfe was bound to redeliver the notes upon demand.— This construction of the contract assumes, that the discharge of the lien was the sole consideration of it, and as this consideration failed, *eo instanti* it was made, the defendant had no right to retain the notes. If this were the proper construction of the contract, it would seem remarkable that Jones should have permitted these notes to have remained in the defendant's possession, without demand, for about four years from the date of the receipt. The receipt was given in 1837, and the demand

by McCabe was made in 1841. But if we are to understand, that the discharge of the lien was the sole and only condition, upon which the notes were to be retained, why did the parties refer the arrangement not only to the approval, but to the *modification* of the Solicitor? Is this expression to be rejected as surplusage? . Was there nothing else but the removal of this lien, which could constitute with Jones, any inducement to give up the notes as mere collateral security? That such a modification might be made, we are not compelled to resort to mere con-- jecture. We refer to the rejected evidence of the plaintiff to show that such a contingency was not beside the contemplation of the parties. In May, 1837, this distress warrant issued against Jones for upwards of $7,000, which bound all his real estate. In November, 1837, Jones gave these notes to the Marshal, upon the understanding expressed in the re-- ceipt. The letters from the Solicitor of the Treasury show, that from this time, (the fall of 1837,) up to 1841, Jones and his friends made repeated applications for a posponement of the sale of his property, both real and personal, and that these applications were successful. As late as February, 1839, we find him assuring the department at Washington, that he confidently expected to be able to discharge the *whole balance* before the last postponement expired. Now it seems from the statement of the Treasurer of the United States, offered in evidence by the plaintiff, that payments had been made by Relfe, on Jones' account, to large amounts, before this last postponement was effected. And it also appears, not only from the statement of Relfe to McCabe, given in evidence by the plaintiff, but also from the return on the distress warrant, also offered in evidence by the same party, that these remittances were chiefly the result of the collection of these very notes, for which an action of trover is now brought. May we not suppose, or rather can we doubt that Jones was aware of these facts, that he knew the defendant was collecting and had been collecting these notes, and that he relied upon them as inducements for urging further postponement? It is not for us to say, that the proof which the plaintiff offered, established all this conclusively. We merely allude to it, as furnishing a reasonable interpretation of the written contract upon which this suit was brought. It shows, as we think, most conclusively, that there might have been other considerations besides the abandonment of the lien upon the land, sufficient to induce Jones to permit the retention of these notes by the United States agents, notwithstanding he had failed in his principal object of getting his lands released from the lien of the distress warrant. Repeated postponements of the sale of his estate, from 1837 to 1841, all of which took

place at the urgent solicitation of himself or his friends, may very well be regarded as such a modification of this contract, as was within the contemplation of the parties to it at its inception, and might be assented to and sanctioned by them afterwards.

We have no doubt, that the release of the lands, bound by the distress warrant, was the principle object in view at the time of this arrangement between the plaintiff and defendant. Indeed it is so expressly declared to be. But the possibility of being unable to accomplish this purpose, is also manifestly present to the minds of the contracting parties, and there-. fore, not only a naked approval of it as it was, is provided for, but modification of it is also contemplated. If the modification entirely defeated the original purpose of Jones, it was his right and his duty to have given notice of this to the Marshal and demanded the notes. But if the modification was really beneficial to him, and it met his approbation and was acquiesced in for years, there could be no ground for maintaining the present action.

The instruction of the Circuit Court was therefore substantially correct. The plaintiff could not maintain his action by merely producing the receipt and proving a demand. It was his duty to have shown, either that this arrangement was entirely rejected by the Treasury department, or was so modified as to defeat all his purposes.

In relation to the refusal of the court to let in the evidence offered by the plaintiff, after he had closed his case, our previous observations in relation to the character of this testimony, are sufficient to show, that there is nothing in the circumstances of this refusal to induce the court to interfere with this exercise of discretionary power, on the part of the Circuit Court.

The other Judges concurring, the judgment is affirmed.